In the Matter of JACKSON BREWING COMPANY, Bankrupt.

RIVERCITY, a Louisiana partnership, Appellant,

v.

William W. HERPEL, as Reorganization Trustee for Jackson Brewing Company, American Can Company, and Hibernia National Bank in New Orleans as Trustee for the Estate of Edgar B. Fontaine, Appellees.

No. 77–2037.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1978.

---

2. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

George W. Pigman, Harry McCall, Jr., New Orleans, La., for appellant.

Peter J. Butler, Gayle A. Reynolds, New Orleans, La., for appellee.

Jerry A. Brown, New Orleans, La., for American Can Co.

Joseph E. Friend, New Orleans, La., for Federal Paper Board.

Raymond J. Salassi, New Orleans, La., Harry S. Hardin, III, New Orleans, La., for South Pacific Transport.

Sidney W. Provensal, New Orleans, La., for Farrell, Naulty, Barkley.

David Creigh, Caronado, Cal., for JBC, Inc.

Charles M. Lanier, Harry A. Rosenberg, New Orleans, La., for Hibernia Bank.

Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.

PER CURIAM:

Rivercity appeals from certain orders of the Reorganization Court which authorized the trustee of the estate of Jackson Brewing Co., debtor (i) to reject as a burdensome executory contract an option owned by Rivercity to purchase certain real estate and leasehold interests of Jackson, and (ii) to accept as an asset beneficial to the estate an amended lease agreement between Jackson as lessee and Hibernia National Bank as lessor.[1] We affirm.

*Beer On The Rocks*

In October 1974 several trade creditors of Jackson Brewing Company filed an involuntary petition seeking to place Jackson in reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501–676. The petition was approved by order dated November 13, 1974, and a reorganization trustee was appointed.

Two interrelated contracts affecting the debtor's real estate are critical to the successful reorganization of Jackson.

In the first of these, dated January 1, 1971, Jackson granted Rivercity, a Louisiana partnership,[2] a five-year option (i) to purchase a strip of land owned by Jackson located on the river side of Decatur Street in New Orleans' French Quarter, and (ii) to acquire the rights of Jackson in a lease between it and Commercial Terminal Warehouse.[3] The total cash consideration for this option was $1,000. Rivercity was to give written notice of its intent to exercise the option between January 1 and 31, 1975, and the closing of the sale was to take place between January 10 and 30, 1976. The purchase price was to be $2,777,128.44.[4]

On January 31, 1975, Rivercity attempted to exercise its option by notifying the trustee of its intent to close the sale on January 30, 1976. The trustee subsequently sought authority from the Reorganization Court to reject the option as an executory contract.[5] Two full days of hearings were held. Un-

---

1. The orders are dated March 9 and March 25, 1977, respectively. Rivercity also appeals from an order of March 31, 1977, authorizing Hibernia National Bank to dismiss with prejudice its answer to the reorganization petition which alleged that the petition was not filed in good faith. Rivercity has not seriously pressed this issue, and it will not detain us here. Suffice it to say, we believe Rivercity's contentions in this regard to be without merit.

2. The members of the Rivercity partnership were Thomas C. Farrell, Jr., Paul A. Naulty, Margaret Perez Barton, and JBC, Inc. When the option was granted, Farrell and Nalty were members of the Jackson board of directors; JBC was a 99% shareholder of Jackson.

3. See note 7, *infra* and accompanying text.

4. The origin of this figure is allegedly the property's depreciated book value as of January 1, 1971.

5. On October 14, 1975, the trustee filed a plenary action in the Eastern District of Louisiana, *William B. Herpel, Trustee, et al. v. The French Eighth*, Civil Action No. 75–3185, challenging the option on the basis that it was void *ab initio*.

At oral argument, the Court was informed that a number of other plenary actions are pending in the District Court with no apparent progress being made or explanations given for the extraordinary delay. These cases are before Judge Gordon and involve basically the same parties, Nos. 75–282, 75–1140, 75–1141, 77–57.

contradicted evidence, still unchallenged by Rivercity, showed that the fair market value of the property covered by the Rivercity option was *at least* $5.1 million.[6] The authority requested by the trustee was granted by order dated March 9, 1977, Judge Schwartz entering findings of fact and conclusions of law on March 25, 1977. See "Reasons for Judgment," attached hereto as an appendix.

The second contract was a lease agreement dated December 27, 1949, whereby Commercial Terminal Warehouse, Inc. leased a tract of land[7] to Jackson for a period of 99 years at an annual rental of $22,500. Hibernia National Bank has succeeded to the interests of Commercial and is the present lessor of this property.[8]

In September 1974 Hibernia instituted eviction proceedings against Jackson based on the latter's insolvency. These proceedings were stayed when the Chapter X petition was approved in November 1974. Hibernia answered the petition by denying that it had been filed in good faith and moved to terminate the lease. The trustee took the position that the lease constituted a valuable asset of Jackson and opposed termination. Ultimately, the trustee and Hibernia reached a compromise whereby an escalation clause was added to the lease in exchange for Hibernia's agreement to abandon its demand for cancellation. This compromise was approved by Judge Schwartz on March 25, 1977.

One other bit of history is essential to an understanding of Rivercity's contentions on

this appeal.[9] When Jackson began to have financial difficulties, American Can Company, a supplier, allowed Jackson to defer payments. After this extension of credit, Jackson borrowed several million dollars from Whitney National Bank of New Orleans. The Whitney loans were secured by stock pledges and security interests in Jackson's assets. According to Rivercity, the mortgage to Whitney was made and accepted subject to the Rivercity option discussed above. Whitney held a first lien and American held a second lien on the same collateral.

As Jackson's financial condition further deteriorated, American—in order to acquire Whitney's first lien position—bought the Whitney loan and Whitney transferred the pledged stock and all of the security interests, including the mortgage, to American. A strike by Jackson employees and mounting claims of unsecured trade creditors led American to exercise its rights as a pledgee to sell the stock and acquire ownership of all the stock as the only bidder at a sale on June 3, 1974. American thus became the sole stockholder and sole secured creditor of Jackson.[10]

The parties disagree as to the real issue before us. The trustee, American, and Hibernia all contend that the question presented is whether the Reorganization Court properly exercised its discretion in rejecting the Rivercity option as a burdensome executory contract and in accepting the amended lease. Rivercity, on the other hand, strenuously argues that the Court "as

---

6. After the option was rejected, Rivercity filed a proof of claim alleging a loss of $3,722,871.56. The following arithmetic probably demonstrates Rivercity's actual opinion as to the property's value:

| | |
|---|---|
| Option price | $2,777,128.44 |
| Lost profit due to rejection | 3,722,871.56 |
| Actual fair market value? | $6,500,000.00 |

7. The land owned by Commercial is contiguous with the property owned by Jackson which formed the basis of the five-year option agreement. The Commercial-Jackson lease, as noted earlier, was also covered by the Rivercity option.

8. When the lease was executed, all the stock in Commercial was owned by Edgar B. Fontaine. At his death, the Commercial stock was transferred to the Hibernia National Bank in trust. Upon Commercial's subsequent liquidation, all assets, including the leased property, were transferred to Hibernia as trustee for Fontaine's estate.

9. The facts relating to this aspect of the case are particularly complex. Only the bare bones of the story are set forth.

10. American Can has filed a proof of claim for approximately ten million dollars to which the trustee has objected.

a matter of law" had no discretion to exercise.[11]

Rivercity's argument proceeds as follows. The amount of the mortgage on Jackson's property is more than the present fair market value of the lease and real estate. American has filed a proof of claim asserting a debt in excess of the fair market value, that debt being secured by the mortgage. The trustee's objection to this claim has not been heard. The Reorganization Court has concluded that the option is a burdensome executory contract within the meaning of Section 116(1) of the Bankruptcy Act [12] and has rejected it. However, there is no showing that the option burdens the estate. At this stage such a conclusion is "premature" because no one, other than American, is benefited by the rejection since no assets are being made available to other creditors. If the trustee is ultimately successful in setting aside the mortgage, the option will then become burdensome. Finally, American is *contractually* subordinated to the right of Rivercity to acquire the property. Therefore, the effect of the order is to decide a dispute between American and Rivercity without allowing Rivercity to be heard.[13]

Rivercity conceded at oral argument that there is absolutely no authority of any kind to support its prematurity argument. And Rivercity has assiduously avoided explaining how an option granted for five years for a consideration of $1,000 to purchase land—worth at least $5.1 million—for $2,777,128.44 could be anything but an onerously burdensome contract to the Jackson estate no matter who, secured or unsecured creditors, ultimately benefits from the rejection.

We view Rivercity's prematurity contention as a transparent attempt to litigate its controversy with American in the Chapter X proceedings. The Reorganization Court properly rejected Rivercity's prematurity contentions and wisely declined to litigate this collateral dispute.[14]

For the reasons set forth by us and the attached findings and conclusions set forth by Judge Schwartz which we adopt, we hold that Judge Schwartz had the discretion to issue these orders and that he properly exercised that discretion. Because the reorganization proceedings have been stymied long enough,[15] our mandate shall issue instanter.

AFFIRMED.

11. Rivercity Reply Brief at 2. Indeed, Rivercity concedes that if we find, as we do, that Judge Schwartz had any discretion to exercise, a reversal on the basis of abuse of discretion is not warranted. *Id.*

12. 11 U.S.C.A. § 516(1).

13. Rivercity also claims that the orders concerning the lease and the good faith issue, see note 1, *supra,* are similarly premature.

By our action, we do not rule at all one way or the other on the controversy between American and Rivercity.

14. It has generally been held that a court of bankruptcy will not digress, in the administration of a bankrupt estate, to settle collateral disputes. Such a rule is obviously sound. The reason for its existence is to eliminate all extraneous issues from the bankruptcy proceeding and thus secure the early closing of the affairs of the bankrupt estate.

Notwithstanding the urge to decide the controversy between the two creditors of the bankrupt estate is strong, we realize the danger of such a precedent. We fear the effect would be the adoption of a practice which would permit claimants to litigate their differences, which would result in the postponement of the final settlement of bankrupt estates. Creditors who are entitled to dividends should have them and should not be deferred until the judicial disposition of disputes between two creditors whose controversy is of no concern to other creditors or to the estate. If we follow the practice determined by the District Court, the two claimants may litigate their dispute in the proper forum and the referee will be directed to turn the amount of the dividends over to the clerk of such court.

It is true some disputes between creditors may well be disposed of when passing upon the claims filed. In determining what disputes should be litigated, the District Court must be allowed considerable discretion. We are loath to disturb the discretion here exercised, when its effect is to hasten the early settlement of the bankrupt estate. *In re Railroad Supply Co.,* 7 Cir., 1935, 78 F.2d 530, 532.

15. See also note 5 as to related plenary proceedings.

## APPENDIX

## REASONS FOR JUDGMENT

This matter came on for hearing beginning on October 26, 1976, on application filed by the Trustee herein to determine whether an agreement entered into between the debtor corporation and Rivercity pursuant to which the former granted to the latter an option to purchase certain real estate of the debtor corporation is an executory contract within the meaning of Section 116 of Chapter X of the Bankruptcy Act, and for authority to reject said contract. The Court, on March 9, 1977, entered an order herein in favor of the Trustee, authorizing him to reject said executory contract and at the same time stated that written reasons would follow. Accordingly, the Court now sets forth the findings of fact and conclusions of law in connection with the said order.

To the extent that any of the following findings of fact constitute conclusions of law they are adopted as such, and to the extent that the conclusions of law constitute findings of fact, they are adopted as such.

## FINDINGS OF FACT

1. By an instrument allegedly effective January 1, 1971, but not recorded until May of 1971, Jackson Brewing Company granted to Rivercity, a Louisiana partnership composed of JBC, Inc. (the then sole shareholder of the debtor corporation), Thomas C. Farrell, Jr., and Paul A. Nalty (who were then both on the Board of Directors of the debtor corporation) and Margaret A. Perez (who subsequently withdrew from the partnership) an option to purchase all of the real estate and leasehold interest owned by the debtor corporation on the River side of Decatur Street in New Orleans, Louisiana.

2. Said option included substantially all of the real estate and leasehold interest owned by the debtor corporation, on the river side of Decatur Street, including substantially all of the buildings where it manufactured and warehoused its products.

3. Said option agreement was given by the debtor corporation to Rivercity in return for a total cash consideration of $1000 and provided that in order to exercise same, written notice must be given of such between the dates of January 1, 1975 through January 31, 1975 inclusive. The option agreement further provided that if it was exercised, Rivercity would then pay a cash consideration to the debtor corporation of $2,777,128.44 which represented the depreciated book value of said property as of January 1, 1971. If the option agreement was exercised the act of sale would take place between the dates of January 10, 1976 and January 30, 1976.

4. On January 31, 1975, Rivercity attempted to exercise the aforesaid option by letter addressed to the Trustee herein. (Jackson Brewing Company was placed in reorganization under Chapter X of the Federal Bankruptcy Act pursuant to an order entered in these proceedings on November 13, 1974).

5. On October 14, 1975 the Trustee herein filed a plenary action which is assigned to another section of this Court, seeking to set the aforesaid option aside on the basis that it was void *ab initio*. That suit is entitled "*William B. Herpel, Trustee, et al. v. The French Eight, et. al.*", Civil Action No. 75–3185 of the docket of this Court.

6. Robert W. Merrick, a qualified appraiser, employed by the Trustee, testified at the hearing on the instant application that the real estate and leasehold interest to which the purported option pertained, has a fair market value of $3,671,000 as of January 1, 1971, and had a fair market value of at least $5,100,000 as of October 26, 1976 (the date of this hearing.)

7. Messrs. Farrell, Nalty and Howard testified that they were unaware of the fair market value of said property as of January 1, 1971, and as of the date of the hearing. Thus the record is uncontroverted as to the value of the property on the aforesaid dates. Further, the Court recognizes the expertise of Mr. Merrick, and accordingly finds that the fair market value of the property was as hereinabove set forth on the dates hereinabove referred to.

8. Thus, if the Court permitted the exercise of the option, the debtor corporation would sustain a loss of $2,300,000 and the resulting effect would be most detrimental to the debtor corporation and its creditors. Accordingly, it would be to the best interests of the debtor corporation and its creditors to permit the Trustee to reject the purported option as it is an executory contract.

## CONCLUSIONS OF LAW

Section 116(1) of Chapter X of the Federal Bankruptcy Act, Title XI, U.S.Code, Section 516 provides that the reorganization judge may in addition to other powers and duties, permit the rejection of executory contracts. Collier in his treatise has defined and expanded upon the meaning of the term "executory contract" as said term is used in the Bankruptcy Act:

"Unfortunately, however, the term 'executory' as applied to contracts is ambiguous. 'All contracts to a greater or less extent are executory. When they cease to be so, they cease to be contracts.' *All that the term implies is that the contract is not completely 'executed,' that something remains to be done.*

" 'Contracts are executed or executory. *A contract is executed where everything that has to be done is done, and nothing remains to be done . . . An executory contract* is one *where it is stipulated by agreement* of minds, upon a sufficient consideration, *that something is to be done or not to be done by one or both the parties . . .* ' "

Vol. 6, *Collier on Bankruptcy*, Section 2.11 at pp. 331–332.

The United States Court of Appeals for the Fifth Circuit has construed the term "executory contract" in connection with Chapter XI of the Bankruptcy Act consistent with the definition set out in Colliers (the term "Executory Contract" as used in Chapter XI is identical, and thus should be applied and construed in the same manner in a Chapter X proceeding). The Court held:

"Both the rule in Texas and in the majority of other jurisdictions is that a contract is executory when something remains to be done by one or more of the parties. An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is already performed."

*In Re American Magnesium Company,* (C.A. 5, 1974) 488 F.2d 147, 152.

See also *In Matter of Universal Medical Services, Inc.,* (E.D.Pa.1971) 325 F.Supp. 890.

Thus the Court concludes as of November 13, 1974 when this corporation was placed in corporate reorganization, that in order to exercise the option, Rivercity had to (a) notify the debtor corporation of its intentions to purchase the property; (b) pay the purchase price; and (c) take title by a certain date. Thus the purported option agreement was an executory one at the time when this corporation was in reorganization.

Rivercity's argument of "prematurity" relative to the rejection of the contract at this time on the basis that the principal beneficiary of the rejection would be the American Can Company and that it is not a creditor and/or that said corporation is not a creditor for the full amount of its claim, and that thus it would be improper to reject the alleged option until such can be shown, is without merit. If the American Can Company is not a creditor as contended by Rivercity, it obviously will not participate in any benefits derived by the debtor corporation with respect to the rejection of the option, or if it is a partial creditor then it will participate only to the extent of $2,777,128.44. On the other hand, if American Can Company has a secured claim equal to or in excess of the value of the property, there is nothing inequitable about permitting it to recover its claim as a secured creditor through a corporate reorganization proceeding particularly when compared to permitting others who have expended little or no effort and who have risked no capital whatsoever, other than $1000, to recoup millions of dollars in benefits.

The Court is of the opinion that Section 116 of the Bankruptcy Act permitting the rejection of executory contracts by Trustee

was included in the Act to provide for, and enable the Trustee to act in, situations such as we presently have before us. The chances of a successful reorganization would be remote if the partners in Rivercity are permitted to make off with the major assets of this bankrupt corporation for a fraction of their value. A rejection of such an onerous contract is manifestly for the benefit of the creditors, will enhance the possibility of reorganization, and even in the event of a liquidation, will permit an equitable distribution of the debtor's assets among its creditors.[1]

New Orleans, Louisiana, this 25th day of March, 1977.

(s) <u>Charles Schwartz</u>
UNITED STATES
DISTRICT JUDGE

---

1. Furthermore, Rivercity may not even be a creditor of the Corporate Reorganization as the option may have been void *ab initio*, and there has been reserved to the Trustee the right to contest the validity of the option. If the option is invalid Rivercity has no claim and has not been harmed by the rejection. If on the other hand, the option was valid, Rivercity would have a claim for damages due to the rejection and would share along with other creditors in the assets and would be placed on a par with the other creditors which is the equitable type of distribution of assets among creditors contemplated by the Act.