**In re DOLPHIN TITAN INTERNATIONAL, INC., Debtor,**

**DOLPHIN TITAN INTERNATIONAL, INC., Plaintiff,**

v.

**GRAY & CO., INC., et al., Defendants.**

Bankruptcy Nos. 85–08464–H3–11, 85–07494–H3–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 31, 1988.

Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., for debtor.

Linton W. Carney, Jr., Monroe & Lemann, New Orleans, La., for defendants.

## MEMORANDUM OF DECISION

LETITIA Z. CLARK, Bankruptcy Judge.

On December 14, 1987, hearing concluded on Debtor's Motion to Reject Executory Loss Fund Agreement. After considering the evidence presented and argument of counsel, the Court issues the following Memorandum. To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

### Findings of Fact

On November 1, 1984, Dolphin Titan International, Inc. ("Debtor") entered into an agreement with Gray & Co., Inc., Gray Insurance Co., North River Insurance Co., United States Fire Insurance Co., and International Surplus Lines Insurance Co., (collectively referred to as "Gray") to provide workers' compensation coverage for a three year period terminating November 1, 1987. Any party could terminate on short written notice. At hearing the parties stipulated to the facts in Gray's December 10, 1985 Memorandum of Law in Opposition to Debtor's Motion to Reject Executory Loss Fund Agreement, including the fact that the coverage had terminated October 31, 1985. Debtor filed bankruptcy November 15, 1985.

The "package" agreement involved three policies, workers' compensation, comprehensive general, and automobile liability, which were to be treated as one for purposes of coverage limits, an Indemnity Agreement, an Excess Liability Policy, and a Loss Fund Agreement. The agreement established Debtor as partially self-insured. The arrangement for the self-insurance was that Debtor was to deposit in a Loss Fund Account an initial deposit of $150,-000.00 to be supplemented by payments to be calculated monthly in accordance with the terms of the Excess Liability Policy. At time of the hearing the Loss Fund Account contained approximately $383,000.00. The arrangement provided for Gray to bill the insured (Debtor), and to deposit the payments by Debtor into the Loss Fund Account. Payments could be made out of the account only upon signature of both Gray and the insured (Debtor). (See Loss Fund Agreement, attached as Ex. B to Gray's December 10, 1988 Memorandum of Law in Opposition to Debtor's Motion to Reject Executory Loss Fund Agreement.) The three policies, for workers' compensa-

tion, comprehensive general, and automobile liability were not before the Court. The Indemnity Agreement, the Excess Liability Policy, and the Loss Fund Agreement were before the Court.

Gray had the sole responsibility for determining the amounts to be carried in the Fund, and for determining if excess amounts in the Fund were to be returned to Debtor. The bank holding the Fund was to correspond with Gray, and Gray was to forward cancelled checks, deposit slips, and bank statements to Debtor on a monthly basis. Finally, the Bank which held the Fund could not offset or attach a lien against the Fund.

The Debtor has contributed to a self-insurance fund to cover workers' compensation claims as part of an insurance agreement with Gray. The Debtor seeks authority to reject what it characterizes as an executory contract on three alternative arguments:

1) The Loss Fund Agreement is an executory contract and can and should be rejected under 11 U.S.C. § 365 (Supp. 1986).

2) The Fund is property of the estate under 11 U.S.C. § 541 (Supp 1986).

3) The Loss Fund Agreement affords preferential treatment to claimants.

It is the Debtor's belief that, were it permitted to characterize the agreements as an executory contract, and to reject the contract, or to characterize the Fund as property of the estate, that it could recover premiums paid in. This Court does not reach the recovery question, as a result of its conclusions on the other questions.

### Conclusions of Law

■ The Code does not define "executory contract." The legislative history contemplates the principle of mutuality, finding an executory contract where "performance remains due to some extent on both sides." 2 *Collier on Bankruptcy*, ¶ 365.02, at 365–13 (15th ed. 1987). The Countryman definition, relied upon by a number of courts, is closely related, contemplating unperformed obligations on both sides. Under that definition, an exec-

utory contract exists if the obligations of the Debtor and the other party to the contract remain "so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973).

The Supreme Court has suggested that reciprocal obligations characterize an executory contract. *See National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) ("[T]he legislative history of § 365(a) indicates that Congress intended the term to mean a contract 'on which performance remains due to some extent on both sides.'"). *See also* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5844, 5963, 6303.

The Fifth Circuit has construed the term "executory contract," holding that:

a contract is executory when something remains to be done by one or more of the parties. An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is already performed.

*Matter of Jackson Brewing Co.*, 567 F.2d 618, 623 (5th Cir.1978). *See also In re American Magnesium Company*, 488 F.2d 147, 152 (5th Cir.1974); *Matter of Tonry*, 724 F.2d 467, 468 (5th Cir.1984). While this definition has much the sound of those quoted above, it is different in a critical respect. It states, without detailed discussion, that a contract may be executory when only one party has not yet completed performance. This distinction does not appear to have been pivotal in any of the three cases, in each of which the contracts were held to be executory. In *Rivercity v. Herpel*, 567 F.2d 618 (5th Cir.1978), both parties were found to have significant remaining duties under the contract. Rivercity's duties included notifying debtor of its intent to exercise its option to purchase real property, to pay the purchase price, and to

take title by a certain date. Debtor's obligations were to hold open the option to Rivercity and to no other, and upon exercise of the option, to convey the property and certain leasehold interests to Rivercity.

In *In re American Magnesium Company, supra,* American Magnesium had agreed to pay a royalty to Ozark on all magnesium recovered on a certain lease, so long as Ozark refrained from acquiring rights in land within a specific reservoir. At p. 152, the court noted that "(b)oth parties had ongoing commitments...." under the contract in question.

In *Tonry, supra,* significant activities remained to be performed by both parties to the contracts in question. Mr. Tonry, the debtor, was an attorney holding various contingency fee contracts. His own services remained to be performed, as did the clients' cooperation in the development of their lawsuits. The Court found the contracts executory, but did not permit their assumption by the trustee, since the clients could withdraw at any time.

Thus in all three of the Fifth Circuit cases, the contracts found to be executory were contracts which involved significant unperformed duties on both sides.

All the Circuits which have addressed the question directly call for significant unperformed obligations on both sides; *See In re Pacific Express, Inc.,* 780 F.2d 1482, 1487 (9th Cir.1986); *Gloria Manufacturing Corp. v. International Ladies' Garment Workers' Union,* 734 F.2d 1020, 1022 (4th Cir.1984); *Matter of Chicago, Rock Island & Pacific Railroad Co.,* 604 F.2d 1002, 1004 (7th Cir.1979); *In re Knutson,* 563 F.2d 916, 917 (8th Cir.1977); or conduct their analysis in terms of contracts breached prior to the filing of bankruptcy, *In re Jolly,* 574 F.2d 349, 351 (6th Cir.1978).

In the instant case, the contract is arguably concluded under any of these definitions. The insurance contract terminated prior to the Debtor's filing in bankruptcy, and the coverage bargained for has been provided (although not all claims are yet determined and paid to the third party beneficiaries). On review of the evidence in this proceeding, the Court finds that the

Debtor's only remaining duty under the Loss Fund Agreement is to cosign checks. Gray's only remaining duties are final determination of and payment of claims to third party beneficiaries, and return to Debtor of any excess in the Loss Fund Account once that determination has been made.

The court concludes that, in this situation, no executory contract is present. *See In re Placid Oil Co.,* 72 B.R. 135 (B.R.N.D. Tex.1987); *In re Gladding Corp.,* 22 B.R. 632 (Bankr.D.Mass.1982).

However, the court recognizes that the Fifth Circuit body of case law could be read for the proposition that a contract is executory where only one party still has significant duties to perform, and recognizes the absence from the Fifth Circuit body of law, of construction of a policy of insurance for an expired term, in the context of the "executory contract" question, pursuant to 11 U.S.C. 365.

Since Gray's remaining duties could be considered significant, the court will address the question of permissible rejection if the contract were considered executory. It is undisputed that Gray is liable for all workers' compensation claims which arose as a result of events which occurred during the policy period. The case at bar parallels *In re Placid Oil Co., supra.* If Debtor had failed to maintain the Fund, or is now permitted to take the money, Gray's performance to the third party beneficiaries is not excused. According to the credible testimony of Gray's representative, Gray must continue to pay claims to workers injured during the policy period plus, in the event of default of Debtor, pay Debtor's portion of the workers' compensation claims. Release of the Loss Fund Agreement to Debtor before determination of all claims arising from events during the policy period would result in the Debtor's unjust enrichment at Gray's expense.

Accordingly, this court holds that, even were the contract to be viewed as executory, rejection of the contract is here inequitable, representing a windfall to which

the Debtor would not have been entitled absent the filing of bankruptcy, and causing damage to Gray & Co., Inc. disproportionate to any benefit to be derived by the Debtor or its creditors. *See, e.g., National Labor Relations Board v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188; *In re Huang,* 23 B.R. 798 (Bankr.App. Panel 9th Cir.1982).

Debtor's liability up to the amount in the Loss Fund Agreement on these claims cannot be fully determined until all workers' compensation claims arising from events during the policy period, are determined. The existence of Debtor's contingent right to reimbursement from the Fund does not establish an executory contract. See *In re THC Financial Corp.,* 686 F.2d 799 (9th Cir.1982).

■ Debtor's next argument is that the Fund is property of the estate. Under this theory, Debtor is presumably seeking a turnover of estate property, in which case, it is the Debtor's burden to show by clear and convincing evidence that the escrow account is property of the estate. *First National Bank of Clinton v. Julian,* 383 F.2d 329 (8th Cir.1967).

The general rule regarding estate property is that the estate is entitled·to the same rights that the debtor held prior to the filing of bankruptcy. *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). Section 541 was not created to enlarge the debtor's rights against others beyond those existing at the commencement of the case. *In re N.S. Garrott & Sons,* 772 F.2d 462 (8th Cir. 1985).

The Debtor and Gray intended to pay third parties (workers) through the Fund, which was an essential and integral part of the insurance arrangement. Custody and control of the Fund was in Gray. The only control the Debtor had prior to filing bankruptcy was to cosign checks. Although the Debtor had a contingent right to excess funds, Debtor had no right to withdraw money from the Fund at will. Pursuant to the agreement, only Gray could determine when excesses in the Fund arose, and determine any return of excess to Debtor.

The agreement does not call for the return of excess funds until all claims are paid. The Fund must be maintained until all potential claims are determined and disposed of, which may occur years after the October 31, 1985 termination of the contract. An assurance fund, where the debtor has no claim or interest in the fund until all prior claims have been paid in full, is not property of the estate. *In re Palm Beach Heights Development & Sales Corp.,* 52 B.R. 181 (Bankr.S.D.Fla.1985). *See also In the Matter of Gulf Industrial Contractors, Inc.,* No. 85–00412K, (Bankr.E.D.La. Sept. 17, 1985), (unreported Judgment and Findings of Fact and Conclusions of Law of Bankruptcy Judge Harvey Kingsmill). For the Court to release the Fund to the Debtor would be contrary to the agreement between Debtor and Gray, and convert Debtor's contingent right into a non-contingent right. *See In re Creative Data Forms, Inc.,* 41 B.R. 334 (Bankr.E.D.Pa.1984). The Court concludes the Fund is not property of the estate.

■ The last argument raised by Debtor is that the Loss Fund Agreement gives preferential treatment to policy period workers' compensation claimants above other unsecured claimants. The Debtor compares the instant case to the case of *Official Committee of Equity Security Holders v. Mabey,* 832 F.2d 299 (4th Cir. 1987). In that case the court ordered the debtor to create a fund out of estate property to provide for surgery of tort victims. On appeal, the order and fund were found to be preferential transfers, and were set aside.

The *Official Committee* case involved a post-petition carving out of estate property to pay the bankrupt's claimants. In the instant case, the Fund itself antedated the bankruptcy, and is not property of the estate. Accordingly, the payments into the Fund, all of which were prepetition, do not constitute a preferential transfer to claimants whose claims arose during the policy period. *See In the Matter of Gulf Consolidated Contractors, Inc., supra.*

In conclusion, the Court finds that the Loss Fund Agreement is not an executory

contract which is subject to rejection; that were it an executory contract, it would be inequitable to authorize rejection; the Fund is not property of the estate, except for the Debtor's contingent right in any portion of it not ultimately paid to workers' compensation claimants; and claims against the Fund are not claims against the estate, and those claimants are not receiving preferential status in this Bankruptcy.