In re LAKE STATES COMMODITIES, INC. a/k/a Lake States, Inc., Debtor.

In Thomas W. Collins, Debtor.

Bankruptcy Nos. 94 B 12123, 94 B 12125.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Feb. 12, 1999.

**603**

Lawrence Fisher, Trustee, Chicago, IL, for Movant.

John J. Kakacek, Kakacek and Lingner, Joel S. Corwin, Chicago, IL, for Respondent.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Chief Judge.

The matters before the Court arise from the Chapter 7 Trustee's objections to claims filed in these consolidated cases and from the responses of certain claimants to the Trustee's objections.[1]

## BACKGROUND

It appears that in 1984, Thomas Collins ("Collins") incorporated Lake States Commodities, Inc. ("Lake States") for the alleged purpose of trading commodity futures. It has been alleged that neither he nor the corporation were registered with the Commodities Futures Trading Commission ("CFTC") and never did any legitimate business. Sometime between 1984 and 1986, Collins purportedly began receiving funds from investors and pooling those funds for the purpose of trading commodity futures.

It has also been alleged that Collins' failure to register the corporation or any of its employees with the CFTC made the pooling of investor funds illegal. Nevertheless, Collins and Lake States traded pooled investor funds with accounts at Geldermann Inc. ("Geldermann"), a registered futures commodity merchant. It is further alleged that in June 1994 it was discovered that Collins had been running a Ponzi scheme whereby he fraudulently induced hundreds of people to invest money with him, that he had been reporting false profits to investors as a

means of inducing new investments, and that he then disappeared.

Involuntary bankruptcy petitions were filed against Collins and Lake States on June 16, 1994. On June 28, 1994 the cases were administratively consolidated. Orders for relief were entered on July 13, 1994. Lawrence Fisher is the duly elected Trustee.

Investors' proofs of claims were filed in the debtors' estates. The Trustee filed objections to the claims of approximately 350 claimants raising primarily three issues. First, the Trustee objected to duplicate claims being filed, when one was filed in each of the two cases. This issue was resolved on May 5, 1998 when this Court ordered that the cases be substantively consolidated.

Second, the Trustee objected to allowing any claim that was greater than the investor's net cash loss. Many investors sought to include interest and consequential damages such as lost profits or lost opportunities in their claims. The Trustee's omnibus objection was sustained by this Court in an oral ruling on July 9, 1998.

Third, the Trustee seeks to reduce the amount of the estates' payments to those investors who received compensation from a settlement in an independent lawsuit that some of the investors brought against Geldermann and others. The Trustee would like to reduce the estates' distributions by the amounts received by these particular investors in their settlement. Strenuous objections were made to these proposed reductions. This issue is resolved herein.

### The Apostolou Case

On June 24, 1994, Louis Apostolou and thirty-five other individuals filed a complaint in District Court against Geldermann and six individuals alleging violations of the Commodities Exchange Act, violations of the Securities Exchange Act of 1934, violations of the Racketeering Influenced and Corrupt Organization Act, violations of the Illinois Con-

---

1. The responses filed that addressed the issue that this Court will resolve were filed by attorney John J. Kakacek on behalf of Arthur Spietz, as trustee of the Marc Chemical Products Corp.

Profit Sharing Trust and James E. Philbin; and a response filed by attorney Joel S. Corwin on behalf of Wesley P. Bork, Jr., individually and as executor under the will of Wesley P. Bork, Sr.

sumer Fraud Act and for common law fraud ("Apostolou Case").[2]

On July 28, 1994 an interim trustee in this case filed an adversary complaint ("Injunction Adversary") seeking an order declaring that the prosecution of the Apostolou Case violated the automatic stay. Alternatively, he sought an order enjoining any further prosecution of the Apostolou Case pursuant to 11 U.S.C. § 105. The plaintiffs in the Apostolou Case responded with a motion to dismiss the Injunction Adversary and to deny the injunction motion.

In an oral ruling on October 12, 1994, this Court denied the motion to dismiss the Injunction Adversary and granted the issuance of an injunction against further prosecution of the Apostolou Case. On November 8, 1994 this Court entered an order clarifying that its ruling was applicable to the seventy plaintiffs who had since joined the Apostolou Case. The October 12, 1994 ruling was appealed to the District Court.

The District Court reversed this Court's decision, dissolved the injunction and dismissed the Injunction Adversary. The Trustee appealed the District Court judgment. The Seventh Circuit ruled on September 9, 1998. It found that the Apostolou Plaintiffs' causes of action are not property of the bankruptcy estate and can therefore be litigated outside the bankruptcy case. It also found that the causes of action are sufficiently related to the bankruptcy case that this Court's injunction against pursuing the Apostolou Case should be reinstated until an adversary proceeding brought by the Trustee against Geldermann and others has been resolved.

While these appeals were pending, the Apostolou Case was settled. Compensation was provided to the Apostolou Plaintiffs.

*The Trustee's Adversary Proceeding Against Geldermann, et al.*

On June 14, 1996, the Trustee commenced an adversary proceeding against Geldermann, ConAgra, Inc., which is Geldermann's parent corporation and six individuals ("Geldermann Adversary") alleging violations of the Commodities Exchange Act, violations of the Racketeering Influenced and Corrupt Organization Act, violations of the Illinois Consumer Fraud Act, common law fraud and fraudulent transfers under the Bankruptcy Code. The Geldermann Adversary was withdrawn to the United States District Court for the Northern District of Illinois on September 11, 1996 and sent back to this Court on March 10, 1998.

In the interim, on or about July 16, 1997 a settlement agreement was entered into between and among Geldermann, ConAgra and the Trustee providing compensation to the estates' unsecured investor-creditors. The order authorizing the settlement was entered September 11, 1997.

*The Issue*

Once the Trustee settled the Geldermann Adversary with Geldermann and ConAgra, he sought to begin making distributions. The three issues discussed above arose and were briefed by some of the creditors and the Trustee. The only issue that remains is whether the Trustee should reduce the amount of the estates' payments to those investor-creditors who received compensation from the Apostolou Case by the amounts they received in their independent settlement. After the parties briefed these issues, the Seventh Circuit issued its September 9, 1998 opinion in the Injunction Adversary. This Court must therefore now consider whether and how that ruling bears on the instant question given the settlements of both the Apostolou Case and the Geldermann Adversary.

## DISCUSSION

The objecting investor-creditors argue that Illinois' collateral source rule precludes the Trustee from withholding a portion of their distributions based on the funds they received from the settlement of the Apostolou

---

**2.** Subsequent to the filing of the Apostolou Case, actions seeking similar relief were filed against Geldermann and others in the District Court by other investors in Lake States. These actions were consolidated with the Apostolou Case for the purpose of discovery and pre-trial motions. All of these actions are collectively referred to hereinafter as the "Apostolou Case" and the plaintiffs who brought the lawsuits or joined thereafter as the "Apostolou Plaintiffs."

Case. This Court must also consider the relevance of the Seventh Circuit's opinion in the Injunction Adversary.

*The Collateral Source Rule*

█ Generally, in contested claim objection matters, state law must be consulted to determine the incidents of the claim, while allowability remains a federal question governed by the policies and provisions of the Bankruptcy Code. *In re Johnson,* 960 F.2d 396, 404 (4th Cir.1992).

█ Accordingly, the creditors argue that Illinois' collateral source rule applies here. "Illinois recognizes the collateral-source rule, under which the amount of damages for a plaintiff in a civil action is not decreased by the amount of benefits received by the plaintiff injured-party from a source wholly independent and collateral to the wrongdoer. [Citation omitted]. The entire theory behind this rule is to keep the jury from learning anything about collateral income which could influence the decision of the jury. [Citation omitted]." *Boden v. Crawford,* 196 Ill.App.3d 71, 76, 142 Ill.Dec. 546, 552 N.E.2d 1287, 1291 (4th Dist.1990).

The Trustee argues that the collateral source rule does not apply here because Geldermann is not a collateral source of funds. He states that the investors' claims against the estate are identical to the claims asserted in their actions against Geldermann. He points out that the investors' initial complaint named Thomas Collins as a defendant but that he was later omitted in an amended complaint because of the bankruptcy. Therefore, he argues, state law requires reduction of the claims by the amounts of the settlement proceeds from the Apostolou Case.

The Trustee further argues that the Bankruptcy Code supports this result. In *North Atlantic Fishing, Inc. v. Geremia,* 153 B.R. 607 (D.R.I.1993), the Court held that a compensatory damage award against a boat seller had to be reduced by the amount of a settlement previously received from a marine mechanic found to be a joint tortfeasor. The Court explained that "[t]ypically, the [collateral source] doctrine applies to such independent sources as insurance policies maintained by plaintiff or an innocent third party, employment wages and benefits, gratuities, social security benefits, and welfare payments .... however this rule does not apply to payments made by 'a tortfeasor or by a person acting for him' or to 'payments made by another who is ... subject to the same tort liability ...'" *Id.* at 611 (citing Restatement (Second) of Torts, § 920A).

With respect to federal law, the creditors argue that the Trustee is trying to do indirectly what the District Court ruled he could not do directly. They contend that he wants to reduce claims by the gross recovery creditors received outside of the bankruptcy from a third party in settlement of their action against that third party. They assert that he is trying to equalize recoveries in and out of bankruptcy by adjusting the distributions from the estate. They argue that their causes of action against Geldermann and others are not property of the estate and that "the purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice ..." *Perry v. Larson,* 794 F.2d 279, 286 (7th Cir.1986).

Here, Geldermann was a tortfeasor who had potential liability for causing injury to the investor-creditors. The funds provided by the settlement of the Apostolou Case are not funds from what would typically be considered a collateral source such as employment or social security benefits. Even in the case cited by the investor-creditors, *Perry v. Larson,* the collateral source was unemployment compensation. According to the allegations in the causes of action against Geldermann, Geldermann was either a joint tortfeasor or subject to the same tort liability as the debtors. Therefore, the Court will not apply the collateral source rule to this situation.

*The Court of Appeals Decision*

In the Injunction Adversary this Court found that the Trustee had standing to pursue the individual investors' causes of action and stayed the Apostolou Case. The District Court found that the Trustee did not have standing to assert those causes of action because they were not property of the estate and that therefore the causes of action were

not subject to either the automatic stay or the § 105 injunction that this Court had imposed. The Court of Appeals decided that the standing issue was "irrelevant" to the resolution of the matter—it concluded that the investors' causes of action are not property of the estate but that they are related to the bankruptcy and that therefore this Court's exercise of "its injunctive power ... was not an abuse of discretion." *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir.1998).

The Court began its analysis with a review of the kinds of causes of action that a trustee may initiate. First, the trustee is the only party who has the responsibility to bring actions to marshal assets for the benefit of creditors. Second, the trustee is the only party who can sue to represent the interests of the creditors as a class. The trustee has no standing however to bring "personal claims of creditors ... in which the claimant is harmed and 'no other claimant or creditor has an interest ...'". *Id.* at 879 (quoting *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348 (7th Cir.1987)).

Relying on the Second Circuit's decision in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), the Court opined that

> For purposes of determining whether a suit must be brought by the trustee on behalf of the creditor class as a whole or may be brought by an individual creditor, the claims available to the trustee are not the same as those the Apostolou Plaintiffs are trying to bring under the Commodities Exchange Act, the Securities Act of 1933, the Securities Exchange Act of 1934, and RICO, and for common law fraud.

*Fisher v. Apostolou*, 155 F.3d at 880.

In *Bankers Trust Co.*, two of the corporate debtor's owners agreed to conceal a major asset from the debtor's creditors. Relying on the misrepresentations, Bankers Trust Co., the largest creditor, agreed to a plan in which it was to receive only 17.5% of its claim. When Bankers Trust discovered the deception, it successfully moved to revoke the plan and then brought an independent action against the debtor's owners under RICO. The corporate debtor's trustee claimed that Bankers Trust did not have

standing to sue the individuals. The trustee argued that if Bankers Trust was permitted to pursue its RICO cause of action, there might be nothing left for the debtor (and hence other creditors) to recover from the individual defendants. The Second Circuit decided that "if Bankers was injured by defendants' acts, as its complaint adequately alleges in this case ... it has standing to bring a RICO claim, regardless of the fact that a bankrupt [debtor] might also have suffered an identical injury for which it has a similar right of recovery." *Bankers Trust Co.*, 859 F.2d at 1101. "Bankers, the court emphasized, was not seeking recovery for injuries suffered by [the debtor], but instead wanted a remedy for injuries it suffered directly as a result of the defendants' bribery, perjury, fraud, and bankruptcy fraud." *Fisher v. Apostolou*, 155 F.3d at 881.

Nevertheless, the Second Circuit recognized that there was an overlap between the trustee's causes of action and Banker's Trust's causes of action because the injuries resulted from the same transactions. To the extent that the trustee could recover for the debtor's injury, the portion of Bankers Trust's "injury stemming from its status as a creditor would be reduced." *Id.* "Because the trustee's efforts had the potential to reduce Bankers' injury, the court held that it was impossible to determine the measure of damages Bankers suffered on its own before the conclusion of the bankruptcy proceeding. It therefore ordered those claims dismissed without prejudice to re-filing after the bankruptcy court resolved the trustee's claims." *Id.*

Relying on *Bankers Trust Co.* the Seventh Circuit decided that the Apostolou Plaintiffs stand in a position analogous to that of Bankers Trust and that "[a]s creditors with claims so closely related to [the claims of] the Lake States estate, the Apostolou Plaintiffs must wait their turn behind the trustee, who has the responsibility to recover assets for the estate on behalf of the creditors as a whole ..." *Id.*

The Seventh Circuit concluded that the Apostolou Plaintiffs' causes of action are not property of the Lake States estate because

their causes of action are not identical to the causes of action of the estate. However, the Court also concluded that "it is difficult to imagine how those claims could be more closely 'related to' it. They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy." *Id.* at 882. Accordingly, the Court saw "no conflict between affirming the power ... of the bankruptcy court to preliminarily enjoin 'suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate,' ... and recognizing the freedom ... of creditors to bring suits that are 'only nominally against the debtor because the only relief sought is against his insurer,' guarantor, or other similarly situated party. [Citation omitted]." *Id.* at 883.

*The Effect of the Settlements and the Distribution of Settlement Funds*

█ As discussed earlier, both of the cases against Geldermann settled prior to the Seventh Circuit's decision. This Court is now in the peculiar position of determining how or whether to apply *Fisher v. Apostolou,* 155 F.3d 876 to the question of whether the estate's distributions to investor-creditors should be offset by funds they received from their independent lawsuits against Geldermann.

As also discussed *supra* the Court of Appeals concluded that the Apostolou Plaintiffs' causes of action are not property of the Lake States estate because their causes of action are not identical to the causes of action that are property of the estate. *Id.* at 882. In this regard, the Court of Appeals also discussed the portion of the Bankers Trust case that found an overlap between the trustee's causes of action and Bankers Trust's causes of action. Analyzing the Second Circuit case, the Seventh Circuit explained that "[b]ecause the trustee's efforts had the potential to reduce Bankers' injury, the court held that it was impossible to determine the measure of damages Bankers suffered on its own before the conclusion of the bankruptcy proceeding." *Id.* at 881. There is in this analysis a clear message that an injured party is not to collect twice on the same causes of action,

once in his independent action and then through the bankruptcy trustee. To the extent that the trustee's action reduces the injured party's damages he is not to collect twice for the same cause of action.

To apply this principle to the situation here, the Court has carefully examined the complaint in the Apostolou Case and the complaint in the Geldermann Adversary. The Apostolou Plaintiffs pleaded four causes of action against Geldermann which contained the same allegations as five of the causes of action against Geldermann pleaded by the Trustee. These were causes of action for violations of the Commodities Exchange Act, the Racketeering Influenced and Corrupt Organizations Act, the Illinois Consumer Fraud Act and common law fraud. The Apostolou Plaintiffs pleaded five causes of action against Geldermann which did not overlap with the Trustee's complaint at all. Those pleaded causes of action for additional violations of the Commodities Exchange Act, for breach of a National Futures Association membership agreement and for violations of the Securities Exchange Act. The Trustee pleaded eight fraudulent transfer causes of action against Geldermann under several sections of the Bankruptcy Code.

The settlement that the Apostolou Plaintiffs entered into with Geldermann compensated them for the causes of action against Geldermann contained in their complaint. It also compensated them for the five causes of action in the Trustee's complaint with which the Apostolou complaint overlaps. The Trustee has obtained a settlement from Geldermann which reduced the creditors' damages and addressed eight causes of action not contained in the Apostolou complaint.

Under the Seventh Circuit's reasoning, the Apostolou Plaintiffs are not to be compensated twice for the same causes of action brought on their behalf by the Trustee. Unfortunately, it is impossible to place a value on each cause of action once a case has settled. In order to proceed, this Court will treat the settlement funds as though they were evenly apportioned among the causes of action. The four causes of action in the Apostolou complaint against Geldermann that plead the same causes of action as the

Trustee's complaint against Geldermann comprise 44% (forty-four percent) of the Apostolou complaint causes of action (four causes of action out of a total of nine causes of action against Geldermann). The allegations in the four causes of action in the Apostolou complaint are the same as the allegations in the five causes of action in the Trustee's complaint. In order to prevent the Apostolou Plaintiffs from collecting twice on these claims, the Trustee is directed to offset the distributions he makes to the Apostolou Plaintiffs by 44% (forty-four percent) of what each of them received from the Apostolou case settlement.

## CONCLUSION

For the foregoing reasons, this Court finds that the Trustee's objection is granted to the extent that when the Trustee distributes the proceeds of the estates' settlement with Geldermann to the Apostolou Plaintiffs he shall offset the funds received by the Apostolou Plaintiffs by 44% (forty-four percent) of the amount that each of them received in an independent settlement with Geldermann. This ruling does not apply to the distribution of any other funds from the bankruptcy estates.