In re MARCHFIRST, INC.,
et al., Debtors.

Andrew J. Maxwell, Chapter
7 Trustee, Plaintiff,

v.

Leonard Megliola, Jr. and Jon Logan
Nelson, on behalf of themselves and
all others similarly situated, Defendants.

Bankruptcy No. 01 B 24742.
Adversary No. 02 A 00589.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 16, 2002.

Norman Pernick, Saul Ewing, LLP, Wilmington, DE, for Debtors.

Wendi E. Sloane, Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLC, Chicago, IL, for Andrew J. Maxwell, Trustee.

Joshua H. Vinik, Milberg Weiss Bershad Hynes & Lerach, LLP, New York, NY, for Defendants.

### MEMORANDUM OPINION

JOHN D. SCHWARTZ, Bankruptcy Judge.

Andrew Maxwell, in his capacity as the chapter 7 trustee ("Trustee") for the bankruptcy estates of marchFIRST, Inc. ("marchFIRST") and its subsidiaries, which are being jointly administered (collectively, "Debtors"), commenced this adversary proceeding with the filing of a complaint on May 7, 2002. The most recent complaint is the Second Amended Complaint, filed on June 21, 2002. In it, the Trustee seeks the issuance of a preliminary injunction pursuant to 11 U.S.C. §§ 105(a) and 362(a)(3), staying attempts by Leonard Megliola and Jon Logan Nelson, on behalf of themselves and all others similarly situated ("Defendants") to obtain possession or control of estate property and enjoining the Defendants from continuing the prosecution of a civil action entitled *Doug Sutton and Prescott Nottingham, on behalf of themselves and all others similarly situated v. Robert F. Bernard, Robert T. Clarkson and Bert B. Young,* pending before the United States District Court for the Northern District of Illinois, Case No. 00 C 6676 ("District Court Action").[1]

---

1. According to papers filed by the Defendants' counsel in the District Court Action, Doug Sutton and Prescott Nottingham were the plaintiffs in one of the first shareholder actions brought in the District Court against the directors and officers and that is why they are the captioned plaintiffs in the consolidated District Court Action. Leonard Megliola and Jon Logan Nelson are the certified class representatives of the consolidated District Court

Simultaneous with the filing of the adversary complaint, the Trustee filed the motion now before the Court. The Trustee seeks the same relief in his motion as set forth in his complaint. The Defendants filed a response to the Trustee's motion, the Trustee filed a reply and the parties argued the matter before the Court. The motion will be granted for the reasons set forth below.

## Background

The Debtors were providers of internet consulting services and of information technology aimed at back-office operations. On April 12, 2001 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. *et seq.* ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware. On April 26, 2001, upon motion by the Debtors, the Delaware Court converted the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. That same day, the United States Trustee appointed Michael B. Joseph as interim chapter 7 trustee. The Delaware Court entered an order dated July 10, 2001, transferring the chapter 7 cases to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. On July 16, 2001, after the transfer of the cases, Andrew J. Maxwell was appointed Trustee of the Debtors' estates. On August 16, 2001 the Court entered an order directing that the Debtors' cases be jointly administered in this Court.

Prior to the Debtors' bankruptcy, no less than nine shareholder actions were filed against marchFIRST and certain of its directors and officers. A plaintiff shareholder class was subsequently certified and on May 3, 2001 the plaintiffs in the District Court Action filed a consolidated class action complaint against Robert F. Bernard, Robert T. Clarkson and Bert B. Young, in their respective capacities as officers and directors of the Debtors, alleging violations of federal securities laws causing damages in an amount to be determined. Defendants admit that the earliest filed shareholder actions named marchFIRST as a party. Once the bankruptcy cases were filed, marchFIRST had to be dropped as a party defendant.

On February 26, 2002, the Trustee filed an adversary complaint in this Court against Robert F. Bernard, Robert Clarkson, David Shelow, Edward F. Szofer, Bert B. Young, Paul D. Carberry, Mark Kvamme, Joseph Marengi, W. Barry Moore, David Storch and John R. Torell, III, in their respective capacities as officers and directors of the Debtors (collectively "Trustee Defendants"). In the Trustee Action, the Trustee is pursuing claims against the Trustee Defendants based on breaches of their state law fiduciary duties to the Debtors and the Debtors' creditors.

In both cases, the Trustee and the Defendants seek to satisfy potential judgments by pursuing, in addition to assets of the directors and officers, the proceeds of directors' and officers' liability insurance policies maintained by the Debtors totalling $50 million. Prior to the Petition Date, the Debtors purchased from Illinois National Insurance Company ("Illinois National") a Directors', Officers' and Corporate Liability Insurance Policy ("Primary Policy"). "Coverage A" of the Primary Policy obligates Illinois National to pay the Debtors' directors and officers for losses they sustain while acting in such capacities. "Coverage B" obligates Illinois National to pay a loss of the Debtors arising from a securities claim brought directly against the Debtors during the policy period and to reimburse the Debtors for any

Action and that is why they are the proper defendants in this proceeding.

amounts they pay to the directors and officers on account of indemnifiable claims made against the directors and officers. The Debtors are obligated to indemnify the directors and officers for their losses pursuant to marchFIRST's Amended and Restated Certificate of Incorporation, marchFIRST's Third Amended and Restated Bylaws and Delaware General Corporation Law. The aggregate limit of liability under the Primary Policy for all of the claims that may be covered by the policy is $25 million.

In addition, the Debtors purchased two excess directors' and officers' liability policies ("Excess Policies") from North American Specialty Insurance Company and Federal Insurance Company, providing aggregate excess coverage of $15 million and $10 million respectively. The terms of the Excess Policies mirror the terms of the Primary Policy.

After the Trustee and District Court Actions were commenced, several motions were filed in the District Court, all of which were ultimately heard and resolved by Judge John Grady, before whom the District Court Action is pending. First, a motion was made for preliminary approval of a proposed class action settlement, in which Illinois National offered $22 million to settle the District Court Action. Second, a motion was made to withdraw the reference to the Bankruptcy Court of this adversary proceeding. Third, a motion was made pursuant to the All Writs Act to enjoin prosecution of this adversary complaint. Judge Grady issued an opinion on August 2, 2002, denying all three motions.

He rejected the settlement, to which the District Court Action defendants objected. He found that the plaintiffs failed to provide sufficient information to enable the Court to determine whether the settlement was fair, adequate and reasonable. He also found that the insurer did not have the authority to settle the claims without the defendants' consent. Judge Grady then denied the shareholders' motion under the All Writs Act because the plaintiffs argued that prosecution of this adversary proceeding would hinder the proposed settlement. Therefore, having denied approval of the settlement, Judge Grady found no basis for the extraordinary relief sought under the All Writs Act.

Finally, denying the motion to withdraw the reference, Judge Grady determined that the plaintiffs failed to demonstrate that the issues in this adversary proceeding required the interpretation, as opposed to the mere application, of securities law, or that there were open and unresolved issues of securities law that required the attention of a District Court judge. Significantly, he also found that the Trustee's claims are core proceedings because they involve the administration of the bankruptcy estate and require application of the Bankruptcy Code.

### Discussion

The Trustee seeks relief on two grounds, under 11 U.S.C. § 362 and 11 U.S.C. § 105(a) and the Seventh Circuit's opinion in *Fisher v. Apostolou,* 155 F.3d 876 (7th Cir.1998).

*Section 362*

■ Section 362 of the Bankruptcy Code protects property of the estate from acts to possess or control it by any entity. 11 U.S.C. § 362(a)(3). The Trustee argues that the proceeds of the directors' and officers' liability insurance policies are property of the estate and that the Defendants' pursuit of those funds is a violation of the automatic stay. There is no question that the policies themselves are estate property. There is authority to support the argument that the proceeds of a directors' and officers' liability insurance policy are also property of a corporate debt-

or's estate. *In re Minoco of Cos., Ltd.*, 799 F.2d 517 (9th Cir.1986); *In re Sacred Heart Hospital of Norristown*, 182 B.R. 413 (Bankr.E.D.Pa.1995); *In re Circle K Corp.*, 121 B.R. 257 (Bankr.D.Ariz.1990). There is also authority to the contrary. *In re Louisiana World Exposition*, 832 F.2d 1391 (5th Cir.1987); *In re CHS Electronics, Inc.*, 261 B.R. 538 (Bankr.S.D.Fla. 2001); *In re Daisy Systems Sec. Litig.*, 132 B.R. 752 (N.D.Cal.1991).

This Court agrees that the proceeds are not property of the estate. However, cases like *Louisiana World* and *CHS Electronics* have taken the position that the directors and officers have a property interest in the proceeds. This Court would not go so far. Even defense funds are not the property of the insured until agreement by the insurer or a finding by the Court. When an insurer pays for the defense of an action against the directors and officers, it does so with a reservation of its rights. No one has a property interest in the proceeds of the insurance policies unless and until there is a judgment requiring that the insurers issue payment. Any property interest in the proceeds has not yet matured and may never mature.

■ "Property of the estate" is defined by the Bankruptcy Code as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. "Although 'property of the estate' for purposes of § 541 is afforded a broad interpretation, it is not without its limits." *In re ANR Advance Transp. Co.*, 247 B.R. 771, 774 (Bankr.E.D.Wis. 2000).

■ Moreover, "[f]iling a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds the interest." *In re Sanders*, 969 F.2d 591, 593 (7th Cir.1992). "Thus, whatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.1984). The Debtors had and the Trustee has contractual rights governed by the terms of the insurance policies. Unless and until the terms are met, which they may never be, the proceeds are not property of the estate. Without *Fisher*, no injunction would issue here.

### Fisher Injunction

■ Section 105(a) of the Bankruptcy Code provides in pertinent part that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In assessing whether to issue an injunction under § 105(a), the Seventh Circuit does not require the court to evaluate the four factors that are usually considered in the decision to issue an injunction. A "bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm." *Fisher v. Apostolou*, 155 F.3d at 882, quoting *In re L & S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir.1993). The moving party must still establish a likelihood of success on the merits. *Id.* And the public interest must always be considered on an injunction motion.

In *Fisher*, the principals of Lake States Commodities, Inc. ran a scheme in which they defrauded hundreds of commodities investors. Actions were commenced in the District Court for the Northern District of Illinois by some of the investors against the principals of the corporation as well as against Gelderman, Inc. ("Gelderman"), a legitimate registered futures commission merchant through which the Lake States principals conducted their trades. The in-

vestors alleged violations of securities and commodities laws and common law fraud.

Ultimately, Gelderman was the only entity from which anyone would recover damages. *See In re Lake States Commodities, Inc.*, 230 B.R. 602 (Bankr.N.D.Ill. 1999). Involuntary chapter 7 bankruptcy petitions were filed against Lake States and one of its principals. The cases were administratively consolidated and orders for relief were entered. In the bankruptcy case that ensued, the trustee commenced an adversary proceeding. His complaint argued that the District Court claims were property of the estate, or, alternatively, that the District Court claims were sufficiently "related to" those of the trustee to support a § 105 injunction against the District Court plaintiffs, staying their lawsuits until the trustee completed his pursuit of the same defendants. The Bankruptcy Court issued an injunction against further prosecution of the District Court cases. In the order, the Bankruptcy Court concluded, *inter alia*, "that the trustee had satisfied the requirements for an injunction under § 105, finding that both parties were pursuing the same dollars from the same defendants to redress the same harms ..." 155 F.3d at 880. The District Court to which the judgment was appealed dissolved the injunction. The Seventh Circuit then heard the case and issued the opinion which is of critical importance to the matter before this court.

In the opinion, the Seventh Circuit reversed the District Court and reinstated the injunction.[2] The problem to be resolved, as the Court viewed it, was that the investors were not suing the debtors, but "third parties who are not in bankruptcy, and who allegedly committed various acts of fraud against them—nondebtor tortfeasors ..." *Fisher v. Apostolou*, 155 F.3d at 879. The Court found that "the investors' claims [were] sufficiently related to the property of the estate that their pursuit should be stayed pursuant to § 105 until the bankruptcy court has disposed of the trustee's claims based on the same underlying transactions." 155 F.3d at 878.

■ According to the Seventh Circuit, "in limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently 'related to' to her own work on behalf of the estate. 28 U.S.C. § 1334(b). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include 'suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate,' *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir.1994), or 'the allocation of property among creditors.' *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992); ... *In re Heath*, 115 F.3d 521, 524 (7th Cir.1997)('related to' means 'likely to affect')." 155 F.3d at 882.

■ There is a difference between *Fisher* and this case. There, the District Court cases were brought by defrauded investors; here the outside litigation has been brought by allegedly defrauded shareholders. Nevertheless, this Court's reading of *Fisher* requires it to issue a preliminary injunction. All of the parties herein seek

---

2. By the time the Seventh Circuit ruled, Gelderman had settled with the plaintiffs in the District Court actions and with the trustee, agreeing to pay substantial sums. *See In re Lake States Commodities, Inc.*, 230 B.R. 602. The Defendants here argue that an injunction will interfere with their ability to obtain a settlement from the insurers. While a preliminary injunction might not enhance their bargaining position, it does not prevent the parties from talking to one another.

redress against the directors and officers who ran marchFIRST and its affiliates. All of the parties herein seek damages arising from the same or similar transactions and acts allegedly committed by the directors and officers, albeit under different legal theories. All of the parties hope to be recompensed from the proceeds of the insurance policies. While "related to" jurisdiction cannot be limitless, "the language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Celotex Corporation v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995). "Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." 514 U.S. at 308, 115 S.Ct. at 1499, n. 5.

Here, a suit between third parties will affect the orderly administration of the estate. If the shareholders obtain a judgment against the directors and officers, the insurers will either make a payment to the plaintiffs or deny coverage. If coverage is denied, the Trustee and the shareholders will be in pursuit of mostly the same assets of mostly the same individuals.[3] If the insurers agree to pay the shareholders, the amount that the Debtors may be obliged to indemnify the directors and officers will be diminished. However, since the funds available to the directors and officers to pay a judgment are the same funds available to the Debtors to indemnify them, a shortfall of funds would affect the administration of the estate. Furthermore, because the Defendants have not delineated a dollar figure for damages in their complaint against the directors and officers, a judgment obtained by the Defendants in the District Court Action has the potential effect of leaving no funds available to pay a judgment obtained by the Trustee in the Trustee Action.[4]

The Defendants rely heavily on the decision in *In re Reliance Acceptance Group, Inc.,* 235 B.R. 548 (D.Del.1999). In that case, class actions against officers and directors of the debtors based on alleged violations of the Securities and Exchange Act were consolidated in a District Court in Texas. The debtors commenced adversary proceedings against the plaintiffs in Texas to enjoin them from proceeding with their litigation. The Bankruptcy Court issued an injunction; the District Court reversed. This court is not persuaded by the reasoning of the District Court in *Reliance* which, if applied, would severely limit the holding in *Fisher.* As discussed *supra* this Court reads the *Fisher* decision as standing for the proposition that a trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin other litigation if it is sufficiently "related to" to his own work on behalf of the estate.

The Court is mindful of the fact that the shareholders have suffered a significant loss. The loss may have been the fault of

---

3. Defendants' counsel seems to think that the "race to the courthouse" is not an issue. The company in which his clients purchased shares is in bankruptcy. Of course, the "race to the courthouse" is an issue. Even if they choose not to file claims in the bankruptcy case because they are unlikely to get paid, the matter is still "related to" the bankruptcy case and subject to the jurisdiction of this Court.

4. The issue has been raised that the *"insured v. insured"* exception of the insurance policies might prevent the Trustee from obtaining a judgment in the Trustee Action. This issue, however, is a matter for another day.

the directors and officers of the Debtors. The Defendants argue that the Bankruptcy Code restricts their recovery and this is true. See 11 U.S.C. § 510. Even under the best of circumstances in a chapter 7 bankruptcy, not everyone gets paid. This is not a rationale for allowing every party with a grievance related to the case to bring his own lawsuit.

The magnitude of the harm is also not the issue. The purpose of a bankruptcy is stop the clock and to gather up the property of the estate, every claim against the debtor, and every proceeding "related to" the case. 28 U.S.C. § 1334(b). Section 105 of the Bankruptcy Code and the Seventh Circuit require this Court to enjoin any related proceeding which may have an effect on the bankruptcy case. There is no question that a judgment in the District Court Action could have a significant effect on this bankruptcy estate. If the judgment is $100 million, the insurance policies maintained by the Debtors would be wiped out, leaving no insurance proceeds for the Trustee to recover. Because the amount of damages are not delineated in the shareholders' complaint, the possibility exists that all of the proceeds of the insurance policies would be used to satisfy such a judgment.

The plaintiffs in the District Court Action will be enjoined from pursuing such a judgment. Nevertheless, it should be pointed out that the Defendants are enjoined only preliminarily and that as soon as the Trustee has completed his action, the Defendants may proceed with the District Court Action.

#### Conclusion

For the foregoing reasons, the Trustee's motion will be granted and a separate order will be entered enjoining the Defendants from further proceeding in the District Court Action, except for discovery. It is suggested that the Trustee and Defendants might share resources to conduct discovery in the Trustee's Action and the District Court Action, to the extent that neither Action suffers. Further, the insurers may continue to pay defense costs. The Trustee's counsel shall submit an order in open Court on December 19, 2002.